Slip Op. 16-38

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DISTRICARGO, INC., <br><br>                    Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br>                    Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 14-00208 |

**OPINION**

[Final scope ruling sustained.]

Dated: April 20, 2016

    Peter S. Herrick, Peter S. Herrick, P.A. of St. Petersburg, FL, Josh Levy, Marlow, Adler, Abrams, Newman & Lewis, P.A. of Coral Gables, FL for Plaintiff Districargo, Inc.

    Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Defendant United States. On the brief with him were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was David P. Lyons, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

    Gordon, Judge: This action involves a scope inquiry conducted by the U.S. Department of Commerce ("Commerce") regarding the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China. See Final Scope Ruling on Exhibition Booth Kits (Dep't of Commerce Aug. 14, 2014), available at http://enforcement.trade.gov/download/prc-ae/scope/49-exhibition-booth-kits-14aug14.pdf (last visited this date) ("Final Scope Ruling"); see also Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 Fed. Reg.

30,650 (Dep't of Commerce May 26, 2011) ("AD Order"); Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) ("CVD Order") (collectively, "Orders"). The U.S. Department of Commerce ("Commerce") determined that Plaintiff's exhibition booth kits did not meet the criteria for a "finished goods kit" as outlined in the Orders, and therefore were within the scope of the Orders.

Before the court is Plaintiff Districargo Inc.'s USCIT Rule 56.2 motion for judgment on the agency record. See Pl.'s Mem. of Law & Argument in Supp. of Pl.'s Mot. for J. on the Agency R., ECF No. 16 ("Pl.'s Br."); see also Def.'s Resp. to Pl.'s Mot. for J. on the Agency R., ECF No. 18 ("Def.'s Resp."). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(2)(B)(vi) (2012),[1] and 28 U.S.C. § 1581(c) (2012). For the reasons that follow, the court sustains the Final Scope Ruling.

### I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). Substantial

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition, and all applicable supplements.

evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2015). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." Jane C. Bergner, Steven W. Feldman, the late Edward D. Re, and Joseph R. Re, 8-8A, West's Fed. Forms, National Courts § 13342 (5th ed. 2015).

## II. Legal Framework

The language of the order itself is the "cornerstone" of a scope analysis and "a predicate for the interpretive process." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2007). Commerce first considers the scope language of the order itself, the descriptions contained in the petition, and how the scope was defined in the investigation and in the determinations issued by Commerce and the ITC. 19 C.F.R. § 351.225(k)(1) (2015); Duferco, 296 F.3d at 1097. If the (k)(1) factors are dispositive, Commerce issues a final scope ruling. See Eckstrom Indus., Inc. v. United States,

254 F.3d 1068, 1071 (Fed. Cir. 2001). If the (k)(1) factors are not dispositive, Commerce analyzes the Diversified Products criteria under subsection (k)(2) of its regulations: (1) the physical characteristics, (2) the expectations of ultimate purchasers, (3) the ultimate use, (4) the channels of trade in which the product is sold, and (5) the manner of advertising and display. 19 C.F.R. § 351.225(k)(2). In this action Commerce determined that the (k)(1) analysis was dispositive. Final Scope Ruling at 9. Plaintiff does not argue that the (k)(2) factors are in issue. See Pl.'s Br. at 6-16.

### III. Scope of the Orders

The Orders cover "aluminum extrusions," which are "shapes and forms, produced by an extrusion process, made from [certain] aluminum alloys." AD Order, 76 Fed. Reg. at 30,650; CVD Order, 76 Fed. Reg. at 30,653. "Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation . . . ." AD Order, 76 Fed. Reg. at 30,650-51; CVD Order, 76 Fed. Reg. at 30,654. Nevertheless, the scope "excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit'" ("exclusion"). AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654. A "finished goods kit" is a "packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product." AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654. The "finished goods kit" exclusion contains an exception: "[a]n imported product will not be considered a 'finished goods kit' and therefore excluded from the scope of the

investigation merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product." Id.

## IV. Discussion

Plaintiff imports exhibition booth kits comprised of extruded aluminum poles, extruded aluminum beams, and iron buckles. Plaintiff imports the components together in the same shipment and entry, but packages like parts together (i.e., poles with poles, beams with beams, and buckles with buckles). Plaintiff explains that the components of its exhibition booths were packaged separately for convenience, and that Plaintiff imported the kits as a single shipment (i.e., in the same shipping container and on the same Customs Form 7501 entry summary). Pl.'s Br. at 6-8, 14-16. After importation, however, a distributor "unpacks, rearranges, and rents the various parts to the ultimate consumer," assembling the products per the specific requests of the end user. Final Scope Ruling at 10. There is no dispute here that the poles and beams in Plaintiff's exhibition booth kits are aluminum extrusions and thus within the scope of the Orders and that the iron buckles are non-aluminum extrusion parts. The only issue is whether the subject exhibition booth kits, as a whole, qualify for the "finished goods kit" exclusion.

The Orders define a "finished goods kit" as a "packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product." AD Order, 76 Fed. Reg. at 30,651 (emphasis added); CVD Order, 76 Fed. Reg. at 30,654.

Commerce has treated kits with separately-packaged components as a "finished goods kit" as defined in the exclusion, Final Scope Ruling on Trade Booth Kits 13-15 (Dep't of Commerce June 23, 2014), available at http://enforcement.trade.gov/ download/ prc-ae/ scope/ 42-trade-booth-kits-24jul14.pdf (last visited this date) ("Trade Booth Kits"). Commerce has not done so, however, in cases where the components must be rearranged into kits after importation. Final Scope Ruling on 5 Diamond Promotions, Inc.'s Aluminum Flag Pole Sets 9-11 (Dep't of Commerce Apr. 19, 2013), available at http://enforcement.trade.gov/ download/ prc-ae/ scope/ 30-5-Diamond-Flag-Pole-Sets-20130419.pdf (last visited this date) ("Although 5 Diamond imports a sufficient number of packages of unassembled sections to create a predetermined number of three-and/or four-section assembled flag pole sets together on the same Customs Entry Summary, after importation, the packages must be opened, and the parts needed to fully assemble an entire flag pole must be re-packaged before being sold to the end user") ("Flag Poles"); Final Scope Ruling on Law St. Enterprises, LLC's Disappearing Door Screens 9-10 (Dep't of Commerce Sept. 12, 2013), available at http://enforcement.trade.gov/ download/ prc-ae/ scope/3 3-Law-St-Screen%20Kits-aluminum-extrusion-PRC-20130912.pdf (last visited this date) ("Although Law St. imports together, on the same CBP 7501 form, 'each and every element or part that makes up the completed screen kit,' the packages must be opened, and the parts needed to fully assemble an entire disappearing door screen must be re-arranged and re-packaged, after importation, before being sold to the end user.") ("Disappearing Doors").

Commerce below reviewed Plaintiff's submissions and concluded that the exhibition booth kits do not satisfy the "finished goods kit" criteria:

> [I]nformation from Districargo indicates that it imports the exhibition booth kits at issue as a single shipment, in the same shipping container, on the same 7501 entry summary and that at the time of importation like parts are packaged together (i.e., poles with poles, and beams with beams, and buckles with buckles). Information from Districargo further indicates that Districargo acts as the importer of record and that a separate firm, Pyramid Construction Services Inc. (Pyramid), acts as the "ultimate consignee." Information from Districargo also indicates that Pyramid does not transfer or sell the products at issue, but instead that Pyramid enters the materials into "service inventory," and then "assembles" the products at issue per the specific requests of the rental client (aka the exhibitor).
>
> Based on this information, we find that Districargo imports the products at issue in separate packaging (i.e., poles with poles, beams with beams, and buckles with buckles), the products are subsequently transferred to Pyramid where the kits pieces remain unassembled in "service inventory," and that Pyramid, acting as a distributor, unpacks, rearranges, and rents the various parts to the ultimate consumer. We find this fact pattern is akin to that examined in [Disappearing Doors] in which the Department found that the products at issue were inside the scope of the Orders because upon importation it was necessary for the kits to be opened, re-arranged, and re-packaged, before being sold to the end user as a kit ready to be assembled into a finished good.

Final Scope Ruling at 10 (citing Disappearing Doors at 9; Flag Poles at 9) (footnotes omitted). Commerce determined that Plaintiff's exhibition booth kits are rearranged into kits after importation and, analogizing this case to its prior rulings in Disappearing Doors and Flag Poles, concluded that the exhibition booth kits are not "finished goods kits" as defined in the Orders. Id.

Plaintiff argues that Commerce unreasonably concluded that the exhibition booth kits do not meet the "finished goods kit" criteria. Plaintiff insists that there is no evidence that the distributor "rearranges" or "repackages" anything. Pl.'s Br. at 14-15. According to

Plaintiff, its exhibition booth kits are "kits at the time of importation" and therefore meet the "finished goods kit" criteria. Id. As a consequence, Plaintiff argues, the facts below are analogous to Commerce's prior scope ruling in Trade Booth Kits, where Commerce applied the exclusion to kits consisting of large, separately-packaged components. Id. at 15-16 (citing Trade Booth Kits at 13, 15).

In the court's view, Commerce reasonably concluded that Plaintiff's exhibition booth kits are not "finished goods kits" as defined in the Orders. Final Scope Ruling at 9-10 (citing Disappearing Doors at 9; Flag Poles at 9). Plaintiff submitted documents to Commerce showing that it sells the booth kits to a distributor, who then rents booth kits to end users. These documents indicate that the distributor opens the separate packages and stores the booth kit parts in its inventory. The distributor "assembles" booths per the specific requests of renters. Id. at 5, 9-10. These documents apparently do not specify whether the booth components stay together as individualized kits from importation until assembly. More specifically, they do not clarify whether the distributor mixes like components in its inventory, rearranging and repackaging the components before assembling each booth to fit renters' requests. See id. On this record, it is reasonable for Commerce to have determined that Plaintiff's "kits" are actually rearranged and repackaged into kits after importation, meaning they are not "finished goods kits" as defined in the Orders. See id. at 9-10; see also id. at 3 (including "final finished products that are assembled after importation" within the scope of the Orders).

Plaintiff would have preferred that Commerce had identified direct evidence that the booth components were "rearranged" and "repackaged" after importation. See Pl.'s

Br. at 15-16 ("Placing the kits unassembled in service inventory does not reasonably bridge Commerce's path to a conclusion that the exhibition booth kits were 'rearranged' or 'repackaged' after importation."). The burden, however, is on Plaintiff, not Commerce, to have demonstrated this fact. For example, Plaintiff does not show that the components required to assemble a booth are arranged together in the shipping container or marked in a way that communicates each box belongs to an individual kit. Cf. Final Scope Ruling on J.A. Hancock Co., Inc.'s Geodesic Structures 7 (Dep't of Commerce July 17, 2012), available at http://enforcement.trade.gov/ download/ prc-ae/ scope/ 16-Hancock-Geodesic-Structures-20120717.pdf (last visited this date) (finding that the product in question "meet the initial requirements" for inclusion into the exclusion in part because the separate packages of like parts contained markings like "box 1 of 3," "box 2 of 3," and "box 3 of 3"). Plaintiff does not show that the distributor maintains its inventory of booth components to prevent mixing of parts between kits, which in turn might suggest the components were kits upon importation. Cf. Trade Booth Kits at 13-15 (finding that the importer's detailed description of the shipping, import, and delivery process qualified the product in question as a "finished goods kit," despite separate packaging of components).

Commerce articulated a second basis for including Plaintiff's merchandise within the scope of the Orders, which Plaintiff also challenges in its brief. See Pl.'s Br. at 11-14. The finished goods kit exclusion has an exception: "An imported product will not be considered a 'finished goods kit' . . . merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product." AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654. Commerce interpreted this language to

cover Plaintiff's exhibition booth kits. Final Scope Ruling at 9-10. The court does not reach this issue because the merchandise must first fall within the exclusion before the exception may apply. More specifically, the "exception" to the exclusion is only implicated if the merchandise is a "packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product." See AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654. Commerce reasonably concluded as a factual matter that Plaintiff's exhibition booth kits do not satisfy this definition, meaning the exclusion is inapplicable, and by extension, the exception to the exclusion cannot apply. The court therefore does not reach this aspect of Plaintiff's challenge to the Final Scope Ruling.

### III. Conclusion

The court sustains the Final Scope Ruling because Commerce reasonably concluded that Plaintiff's exhibition booth kits do not satisfy the criteria for a "finished goods kit" as defined in the Orders. Judgment will enter accordingly.


　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Leo M. Gordon
　　　　　　　　　　　　　　　　　　　　　　　　　Judge Leo M. Gordon

Dated: April 20, 2016
　　　　New York, New York